IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TYRONE EVERETT PAYNE,<br><br>Plaintiff,<br><br>vs.<br><br>T.J. McDERMOTT, in his individual and official capacity,<br><br>Defendant. | CV 15-151-M-JCL<br><br>ORDER |

Before the Court is Defendant T.J. McDermott's Fed. R. Civ. P. 56 motion for summary judgment requesting dismissal of Plaintiff Tyrone Payne's complaint. For the reasons discussed, the motion is properly granted.

## I.  Background

In October 2015, Plaintiff Tyrone Payne, appearing pro se, was incarcerated at the Missoula County Detention Facility. His detention was based on probation revocation proceedings instituted against him in the Montana Fourth Judicial District Court, Missoula County, and Payne concedes he was lawfully in custody based on the court's rulings in those proceedings.

Payne asserts that on October 7, 2015, District Court Judge Robert L. Deschamps, III issued an order in the referenced revocation proceedings directing

1

that Payne be released from custody. Payne complains he was not immediately released, but unlawfully detained for 2 additional days. Specifically, Payne alleges that on October 7 and/or October 8, 2015, he asked several sheriff deputies at the jail to notify McDermott, the Missoula County Sheriff, about the October 7, 2015 order for his release. He states the deputies assured him that McDermott had been notified. Payne complains, however, that McDermott failed to release Payne until October 9, 2015.

Payne suggests McDermott's conduct in prolonging his detention was motivated by a separate matter. Payne's vehicle had been towed and impounded by Missoula County law enforcement officers and a towing company. Consequently, on October 5, 2015, Payne commenced a civil action against the towing company and McDermott apparently to regain possession of his vehicle. He states there was an "October 9, 2015 deadline that threatened to salvage-title Payne's vehicle." (Doc. 2 at 11 of 14.) Payne asserts his civil action was served on McDermott on October 9, 2015, and Payne believes McDermott delayed Payne's release from jail in an effort to interfere with Payne's ability to recover his vehicle.

Payne advances claims against McDermott pursuant to 42 U.S.C. § 1983. He alleges McDermott's failure to release him from custody until 2 days after the

order for his release was issued violated various rights secured Payne under the United States Constitution. Payne also advances a claim under the Montana Constitution alleging McDermott's conduct violated his due process rights protected by Article II, Section 17 of the constitution. He requests recovery of compensatory and punitive damages.

## **II.** **Applicable Law**

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-

21 (9th Cir. 2007).

Additionally, because Payne is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Defendant's summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

### III. Discussion

#### A. Payne's Demand for a Jury Trial

As a preliminary matter, Payne argues McDermott's use of the Rule 56 summary judgment motion procedures improperly violates his right to a jury trial which he demanded on the face of his complaint. Payne cites to *Vaught Construction Corp. v. Bertonazzi Buick Co., Inc.*, 359 N.E.2d 286 (Mass. 1976) in support of his argument.

But *Vaught* did not hold that a summary judgment ruling unlawfully negates a party's demand for a jury trial. Instead, the court held that under the then newly-enacted Massachusetts Rules of Civil Procedure, one party's express waiver of its jury trial demand did not operate to unilaterally deprive the opposing party of its right to a jury trial without that party's consent. *Vaught*, 359 N.E.2d at 288-89. The opposing party's right to a jury trial was, therefore, preserved, but the court nonetheless proceeded to address the pending summary judgment motion.

It is beyond dispute that the summary judgment procedures embodied in Fed. R. Civ. P. 56 do not violate a party's right to a trial by a jury where there exists no genuine issue of material fact. *In the Matter of Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1203 (9th Cir. 1974). Thus, Payne's reliance upon his right to a jury trial does not preclude the resolution of his claims on summary judgment.

### B. 42 U.S.C. § 1983

Payne's claims for McDermott's alleged violations of his rights protected by the United States Constitution are cognizable under 42 U.S.C. § 1983. Section 1983 permits claims under federal law against a local governmental entity, or a state official or employee, if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Payne advances his claims against McDermott in both his individual and official capacities. McDermott moves for summary judgment dismissing both claims.

#### 1. Individual Capacity Claims - Immunity

McDermott argues, with supporting evidentiary materials, that Payne's

claims are subject to dismissal because he (1) had no direct, personal involvement in Payne's detention or release, (2) did not have the degree of active involvement with his subordinates' conduct relative to Payne's situation necessary to subject him to liability as a supervisor, and (3) is entitled to absolute immunity and/or qualified immunity from liability under the facts of this case.

For the reasons discussed, the Court finds McDermott's absolute immunity argument is dispositive. Therefore, the Court will resolve the summary judgment motion on that basis without addressing McDermott's other grounds for dismissal.

The Ninth Circuit has held that prison officials, jailers, and wardens "charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders." *Engebretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013). Officials complying with orders are "performing functions necessary to the judicial process" by enforcing orders which require individuals to be detained. *Id*. at 1040 (quoting *Miller v. Gammie*, 335 F.3d 889, 895-96 (9th Cir. 2003)). A prison official is expected to "act within his or her authority and strictly comply with the [facially-valid court] order." *Id*. at 1041. Thus, the immunity is referred to as quasi-judicial immunity. *Id*. at 1040.

The immunity extends to the prison official's conduct in maintaining custody of an individual pursuant to a facially-valid order, i.e. the immunity

extends to the "fact" of a prisoner's incarceration as prescribed in an order. *Engebretson*, 724 F.3d at 1041. Thus, there exists no independent duty imposed upon a prison official to investigate the legality of any particular order for an inmate's detention – there is "no authority requiring prison officials to review sentencing orders independently to make sure the court got it right." *Id*. at 1041 n.7 (quoting *Stein v. Ryan*, 662 F.3d 1114, 1119 (9th Cir. 2011)). If an official is complying with a facially-valid order, the official enjoys absolute immunity from liability for his or her conduct in detaining a person as directed in an order.

Payne agrees that as of October 7, 2015, he was lawfully incarcerated at the Missoula County Detention Facility based on orders issued in his probation revocation proceedings. In substance, he does not challenge the facial validity of the then-existing orders requiring he be held in custody.

Payne was represented by counsel in the probation revocation proceedings. The parties agree that on October 7, 2015, Payne's counsel emailed to the state clerk of court's office an unopposed motion requesting that Payne be released from custody. The clerk of court's office filed the referenced motion in the court's filing system at 6:53 a.m. on October 8, 2015. (Doc. 29 at ¶ 17.) At 6:55 a.m. a deputy clerk of court emailed the filed motion to Judge Deschamps's judicial assistant. (Doc. 29 at ¶ 18.)

Payne does not dispute the foregoing facts as presented in the evidentiary materials submitted by McDermott. Instead he argues McDermott's evidence does not affirmatively establish that Judge Deschamps did not receive the motion prior to 6:55 a.m. on October 8, 2015. Thus, he speculates it is possible that Judge Deschamps could have received the motion earlier, and maybe on October 7, 2015. But significantly, Payne offers no evidentiary material to support his speculation. (*See* Doc. 35 at ¶¶ 8-10.) Payne does not identify evidence that gives rise to a genuine dispute as to the facts McDermott affirmatively presents establishing that the motion was delivered to Judge Deschamps on October 8, 2015. An opposing party's unsubstantiated speculation on a factual matter is not sufficient to establish a genuine issue of fact. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Undisputedly, Judge Deschamps signed an order granting Payne's unopposed motion for release. But, the exact date on which Judge Deschamps signed the order is subject to a degree of confusion.

With respect to the issue of the date of the order, McDermott relies upon the affidavit testimony of Shirley Faust, the Missoula County Clerk of District Court. Ms. Faust states Judge Deschamps's "Order was filed with the Clerk of Court's Office on October 8, 2015," but that Judge Deschamps dated the order October 7,

2015. (Doc. 29 at ¶¶ 19-20.) Ms. Faust explains that because Judge Deschamps dated his order October 7, 2015, a deputy clerk of court date-stamped the order with the filing date of October 7, 2015. (Doc. 29 at ¶ 20; Doc. 28-5.) Nonetheless, Ms. Faust asserts the order was filed and entered in the state court's filing system at 10:35 a.m. on October 8, 2015. (*Id*.; Doc. 28-4.)

In response to McDermott's presentation of the facts surrounding the date of Judge Deschamps's order, Payne agrees the facts are "undisputed", but he asserts the facts are "disputed" upon the ground that there exists no evidence affirmatively establishing that Judge Deschamps did not receive Payne's motion for release from custody prior to October 8, 2015. (Doc. 35 at ¶¶ 10-11.) But again, Payne offers no evidentiary material to support his speculation that Judge Deschamps may have actually received the motion for release on October 7, 2015.

At 11:33 a.m. on October 8, 2015, a deputy clerk of court emailed Judge Deschamps's order for Payne's release to Payne's counsel and to the Missoula County Attorney's Office. It is undisputed that the Clerk of Court's office did not email the order to either McDermott or the Missoula County Detention Facility.

McDermott asserts that even though the order was emailed to Payne's counsel on October 8, 2015, Payne's counsel "did not alert the Missoula County Detention Facility ("MCDF") to the Order until October 9, 2015." (Doc. 28 at ¶

15.) Indeed, the record reflects that Payne's counsel emailed the order to James Riekena and Mark Harris, Missoula County detention officers at the MCDF, at 8:21 a.m. on October 9, 2015. (Doc. 28-6; Doc. 30 at ¶ 7.)

Payne disputes McDermott's assertion that his counsel did not alert the MCDF officers to the order until October 9, 2015. In his unsworn Statement of Disputed Facts, Payne asserts that his counsel visited him at the jail "that same morning," apparently referring to October 8, 2015. (Doc. 35 at ¶ 15.) Payne states his counsel "verbally informed[] Payne's escorting deputy sheriffs[] of the existence of [the] court order for Payne's release." (*Id*.) Payne called his counsel the next morning, and that phone call prompted his counsel's referenced October 9, 2015 email to the MCDF detention officers.

Payne, however, does not cite to any competent evidentiary materials to support his assertions and representations as to his counsel's appearance at the jail on October 8, 2015, and his counsel's communications with sheriff deputies that day. Payne's unsworn statements about his counsel's conduct, not signed under penalty of perjury, are insufficient to create a genuine dispute of fact. *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015).

In contrast to Payne's suggestion that McDermott was informed on October 8, 2015, as to the existence of the October 7, 2015 order for Payne's release,

McDermott's own affidavit testimony establishes otherwise. McDermott asserts that on or around the dates of October 7 through 9, 2015, he had no personal knowledge of any order for Payne's release from custody. (Doc. 30 at ¶ 5.) He confirms that no deputy or detention officer that he supervises received the order for Payne's release until Payne's counsel emailed it in the morning on October 9, 2015. (*Id*. at ¶ 6.) Once Officers Riekena and Harris received the email and the order for Payne's release, Payne was immediately released at 9:53 a.m. on October 9, 2015. (*Id*. at ¶ 7.)

Based on the foregoing, the uncontroverted facts affirmatively establish that McDermott is entitled to absolute immunity from liability under the circumstances in this case. McDermott had been holding Payne in custody pursuant to facially valid orders of the court requiring that Payne be incarcerated. Although Judge Deschamps issued an order for Payne's release, the uncontroverted record establishes that McDermott did not receive a copy of Judge Deschamps's order until the morning of October 9, 2015. Once his deputies received the order, Payne was released.

Even viewing the facts in the light most favorable to Payne, three asserted factual issues that Payne identifies are irrelevant to McDermott's immunity. First, assuming Judge Deschamps signed and issued the order for Payne's release on

11

October 7, 2015, as Payne suggests, the uncontroverted record confirms that McDermott did not receive a copy of the order until October 9, 2015. Thus, under the circumstances of this case, the date on which Judge Deschamps signed and issued the release order is irrelevant to the determination of the date on which McDermott actually received the order.

Second, assuming that on October 7 or 8, 2015, either Payne himself or his counsel verbally informed McDermott's deputy officers about the order for Payne's release, those facts do not affirmatively establish that McDermott received a copy of the order for Payne's release on October 8, 2015. Importantly, Payne does not assert that either he or his counsel provided the deputies with a copy of the release order on October 7 or 8, 2015. The Court finds no legal exception to the doctrine of absolute immunity where an inmate, either personally or through counsel, verbally notifies jail staff of the existence of an order for the inmate's release. Absent an exception, absolute immunity protects against liability for conduct in compliance with an order for detention. McDermott, therefore, is entitled to absolute immunity for his compliance with the court's prior order requiring Payne's detention up until the time he received an actual copy of the order for Payne's release on October 9, 2015, with which McDermott promptly complied.

Third, Payne argues McDermott prolonged Payne's incarceration because of Payne's lawsuit against McDermott concerning Payne's vehicle. Payne believes that his civil action motivated McDermott to disregard the order for Payne's release. Payne does not, however, identify or present any evidentiary materials in support of his speculation as to McDermott's alleged motivation.

In contrast to Payne's suggestion, McDermott affirmatively asserts he did not even know Payne until he received service of Payne's civil action concerning Payne's vehicle on October 9, 2015. (Doc. 30 at ¶ 9.) McDermott states Payne's vehicle had been towed and impounded following Payne's DUI arrest in September, 2015, but he states he had no personal involvement in either the DUI stop, the towing or impoundment of Payne's vehicle, or any attempt to sell the vehicle. (Doc. 30 at ¶ 10.)

Regardless of any alleged improper motivation Payne believes McDermott had, the issue is irrelevant to McDermott's immunity. Where a governmental official is entitled to absolute immunity, the immunity applies irrespective of the official's alleged motive or intent. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). *See also Mark v. Groff*, 521 F.2d 1376, 1379 (9th Cir. 1975). Therefore, McDermott is entitled to summary judgment dismissing Payne's section 1983 claims against him in his individual capacity.

### 2. Official Capacity Claims

Payne's section 1983 claims against McDermott in his official capacity are addressed as a claim against Missoula County. An official-capacity suit "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Consequently, an official-capacity suit is treated as a suit against the employing governmental entity, and the entity is deemed the real party in interest. *Hafer*, 502 U.S. at 25.

Here, McDermott is the Sheriff of Missoula County, Montana. Therefore, the Court will consider the law applicable to section 1983 liability imposed against a county governmental entity.[1]

Local governmental entities can be held liable under section 1983 (*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978)), but only if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). *See also Monell*, 436 U.S. at 693-94.

---

[1] McDermott's absolute immunity does not extend to Missoula County. It is well established that "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

14

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.

To impose liability against a county government a plaintiff must demonstrate the existence of a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). The custom or practice must be "so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino*, 979 F.2d at 918 (quoting *Monell*, 436 U.S. at 691). Accordingly,

> [l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.

*Trevino*, 99 F.3d at 918 (citations omitted).

Payne argues that McDermott "promulgated his own written or verbal discretion-policy [sic], practice or request for releasing Payne." (Doc. 2 at 11 of 14; Doc. 34 at 13 of 16.) Payne believes that because of the lawsuit he filed against McDermott regarding Payne's towed and impounded vehicle, McDermott chose to continue Payne's detention past an October 9, 2015 deadline Payne had

15

for recovering his vehicle. Payne suggests McDermott's alleged conduct in this single incident in this case constitutes the requisite policy or practice that would subject Missoula County to liability under *Monell*.

Payne's theory of liability under *Monell* is at least cognizable under section 1983. A local governmental entity's liability may also be predicated upon a governmental official's conduct in a single decision where the official was acting as a "final policymaker" for the governmental entity. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004), and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. But the theory of liability requires evidence demonstrating that the official policymaker made the decision after making a deliberate choice from among various alternatives available. *Burgan v. Nixon*, 2016 WL 4444708, *14-15 (D. Mont. 2016); *Dotson v. Funderburg*, 2016 WL 3248205, *7 (D. Idaho 2016).

Assuming McDermott, as the Missoula County Sheriff, possessed official policymaking authority with respect to the release or detention of Payne, and assuming McDermott acted in his capacity as a final policymaker after choosing

from various alternative courses of action, the uncontroverted fact remains that McDermott and his deputy officers did not receive the order authorizing Payne's release until October 9, 2015. Thus, regardless of any animosity McDermott may have harbored towards Payne, he cannot be found to have unlawfully chosen to prolong Payne's detention because he did not possess authority to release Payne until the morning of October 9, 2015, when he received the release order. And upon receipt of the order, McDermott and his deputy officers promptly released Payne. Thus, the evidence does not suggest McDermott made any unlawful decision as a policymaker for which Missoula County could be held liable.

Payne presents no other theory or evidentiary materials suggesting that Missoula County had a custom, policy, or practice of continuing to detain inmates long after a court issues an order for the particular inmate's release, or after detention officers receive a copy of an order for a particular inmate's release. Absent evidentiary support, Payne has failed to raise a genuine issue of material fact as to the existence of a culpable custom, policy or practice. Therefore, McDermott is entitled to summary judgment dismissing Payne's section 1983 claims pled against him in his official capacity.

### C. State Law Claims - Supplemental Jurisdiction

Payne's complaint advances a claim under the Montana Constitution. But

since the Court is dismissing all of Payne's federal claims under 42 U.S.C. § 1983, it must consider whether it should decline to exercise supplemental jurisdiction over his remaining claim plead under Montana law.

Federal law provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors[...] including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims[.]" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Payne's state law claim under the Montana Constitution is a matter of state and local concern, and should be resolved, in the first instance, by the courts of the State of Montana. Therefore, because the Court dismisses Payne's federal claims,

the Court declines to exercise supplemental jurisdiction over his claims under Montana law. 28 U.S.C. § 1367(c)(3).

**IV.** **Conclusion**

Based on the foregoing, McDermott's motion for summary judgment is GRANTED. Payne's claims under 42 U.S.C. § 1983 are DISMISSED with prejudice, and his claim under Montana law is DISMISSED without prejudice.

The Clerk of Court is directed to enter judgment accordingly.

DATED this 30th day of September, 2016.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge